TROUTMAN SANDERS LLP
Steven D. Allison, Bar No. 174491
steven.allison @troutman.com
5 Park Plaza, 14th Floor
Irvine, CA 92614
Telephone: 949.622.2700
Facsimile:  949.622.2739

David E. Meadows, GA Bar No. 500352
(*Pro Hac Vice to be filed*)
david.meadows@troutman.com
Troutman Sanders LLP
Bank of America Plaza
600 Peachtree Street NE
Suite 3000
Atlanta, GA 30308-2216
Telephone:  404.885.3000
Facsimile:   404.885.3900

Attorneys for Non-Party
TOTAL SYSTEM SERVICES LLC

TROUTMAN SANDERS LLP
875 THIRD AVENUE
NEW YORK, NY 10022

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DANIEL DUONG,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>GROUNDHOG ENTERPRISES, INC.,<br><br>　　　　　Defendant. | Case No.  2:19-cv-01333-DMG-MAA<br><br>**DECLARATION OF KARIN REISINGER IN SUPPORT OF TOTAL SYSTEM SERVICES LLC'S MOTION TO QUASH THIRD PARTY SUBPOENA**<br><br>Hearing Date: January 21, 2020<br>Hearing Time: 10:00 a.m.<br>Courtroom:  690<br><br>Magistrate Judge: Maria A. Audero |

40845218v1                                         -1-                         CASE NO. 2:19-CV-01333-DMG-MAA

I, Karin Reisinger, declare and state as follows:

1. I am currently employed by TSYS Acquiring Solutions, L.L.C. ("TAS") as a Contract Administrator. TAS is a wholly-owned subsidiary of Total System Services, LLC ("TSYS"). TSYS is the successor-in-interest to Total System Services, Inc., which existed prior to a recent merger with Global Payments, Inc. TAS and TSYS provide payment processing services, merchant services, and related payment services to financial and non-financial institutions.

2. This declaration is based on my personal knowledge.

3. TAS is party to a Processing Services Agreement (the "Agreement") with Groundhog Enterprises, Inc. d/b/a Merchant Lynx Services ("MLS"). I am responsible for administering that Agreement and am familiar with its terms. Generally speaking, per the Agreement, TAS provides payment processing services to MLS, such as payment authorization, capture, merchant accounting and clearing services, and chargeback processing.

4. In performing services under the Agreement, TAS processes payments and chargebacks for merchants who are customers of MLS. Those merchants are not customers of TAS, and TAS has no contractual relationship with those merchants.

5. Since entering into the Agreement, TAS has processed a very large number of transactions and/or chargebacks for the merchants who are customers of MLS. Based on my research thus far, I estimate the number of transactions at issue to be in excess of 100,000. Those transactions include both point-of-sale payment authorizations (for example, when a customer makes a purchase from a merchant using a credit or debit card) and chargebacks (when a payment transaction is reversed after it has initially been processed).

6. I have reviewed the Subpoena issued to Total System Services, Inc. by Daniel Duong in connection with his lawsuit against MLS. That Subpoena requests, along other things, "[a]ny and all documents, including, without

1  limitation, all records, agreements, communications" relating to 134 merchants for
2  which TAS processed transactions pursuant to the Agreement.  As stated above, I
3  estimate the number of responsive transactions to exceed 100,000.  Records of
4  payment clearing and settlement transactions are not easily retrievable by TAS.  In
5  particular, to pull records of those transactions, TAS would have to locate and
6  segregate aggregated spreadsheets for each merchant.  I estimate that there are
7  approximately 20 spreadsheets per merchant, for an estimated total of more than
8  2,500. There would be additional records for chargebacks and merchant statements.
9  Thus, gathering, organizing, and producing "all records, agreements,
10 communications" pertaining to the 134 merchants listed in the Subpoena would
11 take several weeks at least, and would require the participation of multiple TAS
12 employees across more than one business group.  Furthermore, based on my
13 experience and knowledge as Contract Administrator, I am confident that MLS has
14 transaction-level data for payment transactions (including chargebacks) processed
15 by TAS under the Agreement.

16    7.    The Subpoena also requests "[a]ny and all documents that refer or
17 relate to any communications between you and any of the Defendants or any person
18 acting on its behalf from January 1, 2017 through the present date."  Because TAS
19 has an Agreement with MLS, there are regular communications between the two
20 companies.  Insofar as I am aware, none of those communications relate to Daniel
21 Duong's employment with MLS.  Attempting to gather and review all
22 correspondence between TAS and MLS from January 1, 2017 forward would take
23 several weeks at least and would require the participation of multiple TAS
24 employees across more than one business group.  In addition, producing those
25 records would require TSYS to incur significant fees (most likely, well in excess of
26 $15,000) to review the documents for privilege and responsiveness and to prepare
27 the final production.

TROUTMAN SANDERS LLP
875 THIRD AVENUE
NEW YORK, NY 10022

8. In performing the Agreement, TAS has no access to MLS's fee or pricing arrangements with its merchant customers. Nor does TAS have any information about MLS's employment contracts or its commission structure with sales agents. Insofar as I am aware, and based on a search of certain company databases, neither TAS nor TSYS has not had any communications with Daniel Duong.

9. Neither TSYS nor TAS has a contractual or other business relationship with Daniel Duong.

10. TSYS and TAS conducted a limited search for any correspondence with Westamerica Bank referring or relating to the Plaintiff Daniel Duong ("Duong") and Defendant Groundhog Enterprises, Inc. d/b/a Merchant Lynx Services' ("MLS") termination of Duong. We found no correspondence regarding these issues.

11. Neither TSYS nor TAS underwrites or performs any due diligence on MLS's merchant customers. That is a task performed solely by MLS. Thus, none of TAS's internal policies for merchant underwriting apply to the merchants whose transactions are processed by TAS pursuant to the Agreement.

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 18, 2019.

*Karin Reisinger* (signature)

# **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 11-3, I certify that the foregoing complies with the font and point selections permitted by L.R. 11-3.1.1. This brief was prepared on a computer using the Times New Roman font (14 point).

Respectfully submitted, this 18th day of December, 2019.

*/s/ Steven D. Allison*
Steven D. Allison